Thank you. May it please the court, Mario Valencia on behalf of Paul Davis, and with court's permission, I'd like to reserve two minutes for reporting. If you have a thought, I'll try to help you with it. Okay. Will do. So, this is a drug trafficking case. We've raised numerous issues on appeal. Mr. Davis took his case to trial, so we have raised a couple of issues dealing with the pretrial proceedings. We raised a couple of issues dealing with some of the challenges with drug trafficking. I think you should give us a little pause if you have time. Why don't you give us your best argument? Okay. Let's start with you. Okay. We'll do that. So, I was going to start with what I think is our best argument on the pretrial issue. Mr. Davis filed a motion to suppress the evidence in this case. The way that this happened was that on July 26th of 2013, Mr. Davis was stopped on I-15 driving southbound into Las Vegas by a Detective Robichaud. Detective Robichaud said he stopped him because he had an inoperable headlight and he saw that he had Kansas plates. So, he pulled them over, had no intention of giving him a ticket, but then found that he was belligerent, ran records checks, saw that he had a prior conviction, was on supervised release for that prior conviction dealing with drug trafficking. They did a dog sniff around the car. It didn't alert, so he The next day, July 27th of 2013, Saturday, it's about 9.15 in the evening. Detective Robichaud is again on the side of I-15 and he says that he sees the same vehicle, a Maroon Tahoe, now heading out of Las Vegas, northbound on I-15. He testified that he passed him going 75 miles an hour, and speed limit there is 75, but he is suspicious that something has gone wrong, like he was suspicious the day before. So, he jumps in behind Mr. Davis and begins to pace him. Now, Robichaud testified that he has no training in pacing and that he was like mile marker 56 within a couple of miles or so, so mile marker 58, he's able to catch up to him, and that he's pacing him at about 200 yards away, which would be about 35 car lengths. And so, he says that as he begins to pace him, which again, he has no training for, he thinks that Mr. Davis is going 80 miles an hour. So, he calls up ahead to one of his partners, who is on the narcotics intervention task force, but she's also trained as a patrol officer as well, right? That's correct. So, she's a different sort of difference there. That's correct. She's a Nevada Highway Patrol officer, and she did have experience in pacing. So, what happens is he calls her up ahead and explains that he's been pacing Mr. Davis. He thinks that he's speeding, and he explained a little bit about it the night before. They actually pass her as they're going down I-50 and heading that way, and he wants her to record the conversation. He goes in her car, she has radars, she's got the video, she's got a GPS, she's got all of that. She jumps in and begins to pace him. She claims it took her from a standstill, even though they passed her about eight miles or so, to catch up to Mr. Davis. And then she does take over and begins to pace Mr. Davis. Now, she is trained. You're absolutely right. The difference is that she's relying on a GPS system. And we submitted the video. I'm not using it here for moral argument, but I would encourage the court, if they haven't, to take a look at the video, because it supports what we're arguing. The GPS system is faulty. She didn't use radar in what she could have, and she had an excuse for that. But then she says she gets behind him and she's relying on her GPS, but the GPS actually shows that as she turns on her lights at first, it shows that they've got different speeds, 73, 74, 75, 77, and back down to 80 at one point in time. But you can see in the video that what she's doing, meaning she's actually catching up to Mr. Davis. Is it your position, counsel, that if there's any small difference, that there's not reasonable suspicion? In other words, if he was really not going over the speed limit, that there was no lawful basis for stopping his vehicle? Is that your position? So, I'm sorry, I misunderstood. If he was not going over the speed limit? Even if her affirmation was not accurate, but if she perceived that it was, would you say that she did not have reasonable suspicion to stop his vehicle? That is correct, Your Honor. And what case law would you rely upon for that? The cases that say that it has to be an objective basis, not a subjective basis. Well, what you're saying is if there's a faulty machine, then it's just over, right? If there's a faulty machine, is she relying on the faulty machine? Yes, that's right. Then she would not have had reasonable suspicion, not objectively. Subjectively, she would, but subjective doesn't matter. So that is her position. I imagine the analysis consists of a voluntary statement where we, I think, would adopt a little different approach in our court. There is a reasonable suspicion. A reasonable suspicion is a common-sense, non-technical conception that deals with the factual and practical considerations of everyday life on which reasonable and critical men, not legal technicians, act. I think that's a little different just than the one you gave us here. Would you sort of argue how, under our approach to reasonable suspicion, you feel there's not reasonable suspicion? Well, in this case, Your Honor, I'm not necessarily arguing maybe for a different test. I wouldn't disagree with what the court just read from the case. I think if the court had taken a look at this video and the evidence, for example, Robertson testified in the video. That was a video? To the trial judge. Correct. And they used it at trial and they used it at the evidentiary hearing. They mean the prosecution? Correct. And your argument at that time before the district judge was what? The defense counsel actually argued that it was a plaintiff's fault. Stop. He didn't argue so much about the faultiness of the Chief Justice. So your argument to us now is different from the one that was raised on behalf of your client at that time. Correct, but it's still based on the evidence which was presented, Your Honor. It is different, but it still is based on the video. For example, the GPS, and you can see this on the video, the date that Rosalind testifies shows the wrong time, and I can't remember if it shows the wrong date, but I believe it also may show the wrong date, but it shows for sure the wrong time. That was never brought before the district judge. It was never denotated. So we've got to deal with that in terms of setting back for some additional testimony, or what do you have to do for it? No, since it was objected to at trial and before trial, I'm asking the court to take a look at the evidence and actually find that, in fact, there was not an objective reason, basis for pulling it over based on this faulty GPS system. If I understand correctly, that was never raised to the district judge in the trial court. The video was presented, you're correct, but not that argument about the faultiness. Right. In other words, it was just presented as, that Detective Robichaud and Rosalind were going to pull him over anyways, which they did testify to. So we have a situation where it seems to me the lawyer representing your client is weighing that by not raising it at the district court level. Again, as far as the argument goes, I don't have anything to say except that it is true that the GPS, the faultiness of it, was not actually argued or raised at the district court, but it is based on the evidence before this court and what was before the district court. Do you want to say anything of your counterargument? I want to save the last minute because I do want to mention real quick one more issue. If I run out of time, then I'll spend some time looking. And that's the mistrial. Before the trial started, quickly the government moved to admit a prior conviction that Mr. Davis had under Rule 404B. It was a 2000 conviction that he had for small sales of crack cocaine near a university in Kansas. Correct? The court allowed them under 404B to admit that evidence, but just the one conviction and only to show knowledge and intent. At trial, however, the very first witness that the government put on was Detective Robichaud, and when he was asked about the records check that he did, he says, Oh, no, Mr. Davis has numerous priors. That's objective. Also, sidebar, there's a sidebar. I would just say that I just gave a little light on the government in my brief. In the sense I would ask the court to please go back and read Excerpts of Record, Volume 3, Pages 401-403, because the way I played it out in the briefs was I gave the government the benefit of the doubt to suggest that maybe Robichaud just was a slip of the tongue, he wasn't maybe coached properly. But, in fact, if you read those pages, you will see that the government had every intention of admitting evidence of all those priors, and they were prior arrests. And the judge called him on it and said, Oh, no, no, I didn't know about this. I only ruled on the one conviction. And the cure was ineffective, because I think we have an argument in the room. And we thank you for that. Your time is up. Solicitor, we have a quorum. Good morning. Good morning. May it please the court, Peter Levitch of the United States. In response to defendants' arguments regarding the stop on the 27th, the stop was supported by ample reasonable suspicion. The standard by which we evaluated is, Judge Wallace correctly pointed out, a common-sense analysis of the totality of the circumstances. As this court explained in Cotterman, we do not nitpick various factors in isolation. In this case, we have two trained officers. Officer Robichaud maybe was unspecifically trained in pacing. He had 11 years on the force, two years in the interdiction, and pacing is not a highly technical skill. It's following a vehicle at the same speed that that vehicle is traveling and glancing down at one speedometer. What is that, a speedometer? 75 miles per hour. You did your score on AYC this morning. How fast? Between 78 and 80. We have both officer Robichaud and Trooper Brosnahan, who used him irrespective of the GPS, irrespective of the camera. They followed him at the same speed. They looked down at their respective speedometers, and they both found he was in violation of Nevada Revised Statutes. And that furnished, in the totality of the circumstances, looking at it reasonably, a reasonable basis to perform the vehicle stop. Your honor is correct. This argument about whether the GPS was off-kilter, was not pressed at the evidentiary hearing or in trial, had it been perhaps officer Brosnahan would have said something along the lines of, Our view comes to register six for a couple of seconds until it goes to zero. We don't know because it wasn't, as your honor would put it, ventilated. Now, it's clear that the officers are going to stop this person. He came in, he gave the officer a hard time, and then a day later he's on his way out. They were looking for a reason to stop him, and it was just a question of whether they got enough here to make the stop. The rest flows with the smell of the marijuana, et cetera. They're just pretty close. If you don't go five miles over the speed limit in California, you get rear-ended. So it would seem to me that they were looking for an excuse, and the question is whether this is a sufficient excuse to pull him over. And I suspect a speed limit is one that you can use. Your honor's suspicion is correct, and the Supreme Court instructs in Wren that subjective motivations are not germane to the Fourth Amendment, it's true. So we have two trained police officers who have paced him based on glancing down at their respective speedometers at over 75 miles per hour, and that's sufficient for the stop. What about the last argument counsel made about the drug profile? I believe the last argument was about the mistrial. Yeah, or the mistrial, yeah. The mistrial argument was Detective Rovershutt on the stand did blur out fires, plural, and there was an objection. The district court did dress down the trial prosecutor and say, I want this cured, and the trial prosecutor then went out and emphasized on three different occasions the singular nature of the prior campus conviction. That's right. Counsel then argues, yeah, that's one prior in Kansas, but maybe what the police officer are implying, that there's convictions in Montana and so forth, and it doesn't really fully address it because it's limited to Kansas. Well, I would respectfully disagree with Your Honor's characterization. Okay, that's what I wanted to find out. Where am I going astray? Your Honor is going astray in not countenancing sufficiently, not only that there were three separate court-directed cures of this misstatement, but also that the district court gave a jury instruction to the jury that the defendant is not on trial for anything not charged in this indictment, and they're presumed to follow the district court's directions. I would respectfully submit that that removes any suspicion of a pervasive guilt from this. At the time that this occurred in the trial court, and the trial judge limited it prior to Kansas, was an objection made by the defendant that this is insufficient because it doesn't take care of the other 49 states? No, that specific objection was not made. Defense trial counsel, who's not appellate defense counsel, objected on the grounds that the district court's order permitting the 404B testimony permitted the prosecution to induce the prior Kansas narcotics conviction from 2000, and Detective Robichaud used the plural in his response. So the objection did not specifically address the 49 other states, but it did address the progress of the perceived exemption. Excuse me, did Robichaud say, for the use of the virus to desecrate numerous priors? I believe he did. And does that change your analysis in any way, shape, or form? No, Your Honor. Again, this is a trial. These mistakes and accidents happen. No ill will can be ascribed to the detective. The trial prosecutor asked, and what did you learn from the July 26th records check? This is really a cultural question in North Dakota, so we try cases differently than they do in Nevada, and I'm trying to figure out why in the world are we trying in this case to question the pretext for the stop of that motion to suppress what's already failed, smiles that the basis for the stop is being tried in a way that's like being tried at the wall. I mean, this is not just sort of we lay it in just a little bit. It's like the defendant's in there putting evidence about the nature of the stop, the government's responding, and what was the purpose of the suppression motion, if we're going to try it all again in front of the jury, since you had no time in Nevada. Taking Your Honor's last question first, no. I think the trial prosecutor might have been able to plausibly assert at trial that none of this was relevant, that the district judge had already found as a matter of fact that he was speeding and that there was a reasonable suspicion existed, but perhaps in an abundance of caution, particularly given that this defendant opted unwisely to take the stand, that he was permitted a little additional latitude. I pointed out, however, in the answering brief, that this act has been found, and the magistrate who entertained the live court testimony at the evidentiary hearing found in excerpts of record, page 10-1 and page 10, that Brosnahan and Robichaud were credible. So I don't know why I can say this doesn't happen all the time. I was just curious, one of them didn't mean it, just a pathologist. But I gather counsel, the government takes the position that, yes, the mistake was made here, it shouldn't have happened, but it was pure and any error was, in effect, heartless. Is that your position? Yes. In sum and substance, Your Honor, that is our position. And that the district judge gave you the appropriate jury instructions, and punishing the jury, they can't consider anything outside of the four quarters of the indictment. Unless the panelists have any further questions. We do. Thank you. Thank you. If you remember we have any time left, counsel, I don't think you do well. We thank you both for your argument. If you disagree, please submit it.
judges: Wallace, M. Smith, Erickson